J. W. LAWRENCE, Adm'r, v. J. C. HESTER et. al.

*Contract, Special and Implied— Variance—Pleading—Evidence Verdict.*

1. Where there is a *special* contract there can be none *implied* by law between the same parties in respect to the same subject matter.

2. A variance between pleadings and proofs is immaterial unless it has actually misled the adversary party. The Code, § 269.

3. The objection that the proof offered in support of a cause of action is insufficient to warrant the jury in finding a verdict therein, should be taken at the close of the testimony by asking instructions to that effect; and if such objection is not then taken, but the case is allowed to go to the jury, the Court will not disturb the verdict, if there was any evidence tending to support it.

(*Carter* v. *McNeely*, 1 Ired., 448; *Dula* v. *Cowles*, 2 Jones, 454, and 7 Jones 290; *Niblett* v. *Herring*, 4 Jones, 262; *Ducker* v. *Cochran*, 92 N. C., 579; *Thigpen* v. *Leigh*, at this term; *Greensboro* v. *Scott*, 84 N. C., 184, cited and approved).

This was a CIVIL ACTION tried before *Shepherd, Judge,* at the Spring Term, 1885, of the Superior Court of VANCE county.

The plaintiff's action is to recover judgment for a debt due his intestate secured by a conveyance of land, and for a foreclosure by sale thereof. The defendants assert a counter-claim against the deceased for $2,000, or more, as due the *feme* defend-

ant for board and services rendered during a series of years to the intestate, and for which it was understood and agreed between them he should make provisions by his will.

He left no such will, and the only controversy at the trial was as to the existence and validity of the alleged contract. The only issue tendered by the defendant was in this form :

"Were the services, if there were any, performed by defendant for plaintiff's intestate under a contract or mutual understanding and agreement that compensation to the amount of $2,000 was to be provided in the will of the plaintiff's intestate?"

To which the jury responded in the affirmative.

At the close of the evidence the plaintiff tendered the following issues :

"Did the defendant Lucy A. Hester render service to Turner Lawrence under an agreement or mutual understanding that she should be compensated therefor by his will? If so, what was the reasonable value of such service?"

These issues were objected to by defendants, who stated that they relied entirely upon the special contract as alleged.

The Court declined to submit the issues and the plaintiff *excepted.*

There was no prayer for special instructions on either side and no exceptions to the charge. After the verdict the plaintiff moved for a new trial because the verdict was against the weight of the testimony, and also because the Court declined to submit the issue tendered by him. The motion was overruled and the plaintiff *excepted.*

The plaintiff opposed a judgment for defendant:

1. Because no issue was submitted as to the actual value of the services performed.

2. Because the defendant is entitled to only nominal damages.

3. Because there is a variance between the pleading and the issue as submitted to and found by the jury. Because there was no evidence to sustain the verdict.

The Court gave judgment for the defendants, and the plaintiff appealed to the Supreme Court.

*Mr. E. C. Smith,* for the plaintiff.
*Mr. D. G. Fowle,* for the defendants.

SMITH, C. J. (after stating the case).   1. The refused issue was rendered immaterial by the declaration of counsel that no claim was made for the unascertained value of the services and supplies, but that it was based upon a special contract, and the affirmative finding of the jury upon that submitted to them. Where there is a special contract there can be none implied by law. The one when complete excludes the others, and the defendants had the right to ask a recovery upon their ability to prove what they alleged.

"The law presumes a promise," is the language of Mr. Green-leaf in sec. 103 of the 2nd volume of his treatise on the Law of Evidence, "only where it does not appear that there is any special agreement between the parties.   For if there is a *special contract* which is still open and unrescinded, embracing the *same subject matter* with the *common counts,* the plaintiff, though he should fail to prove his case under the special count, will not be permitted to recover upon the common counts."   And so have been the adjudications in this State.   *Carter* v. *McNeely,* 1 Ired., 448; *Dula* v. *Cowles,* 2 Jones, 454, and 7 Jones, 290; *Niblett* v. *Herring,* 4 Jones, 262; *Ducker* v. *Cochran,* 92 N. C., 597; *Thigpen* v. *Leigh,* at this term.

2. The second exception rests upon an alleged variance between the pleading and the finding of the jury upon the proofs offered of the contracts, the answer averring a mutual understanding between the intestate and *feme* defendant, that adequate compensation should be provided in the former's will, "to the extent of $2,000 at least," while the verdict establishes a fixed and definite sum.

The variance falls directly within the correction and remedial provision contained in section 269 of The Code, which declares that "no variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action."

The counter-claim, which is but a cross action, is governed by the same rule.  *Greensboro* v. *Scott*, 84 N. C., 184.

3. The last exception is to the sufficiency of the evidence to warrant the jury in finding that there was a special contract, or in other words, that there is no evidence of it.

The proper mode of taking this objection was, when the testimony was all in, to ask the Judge to charge the jury that there was no evidence of the contract embodied in the issue, and their verdict should be in the negative.  This was not done, and the inquiry was left to be made by the jury without instructions, as if there was evidence to be considered.  There was no prayer for directions asked by either party, and there were no exceptions to the charge as delivered.

But aside from this omission to make the exception in apt time before the rendition of the response to the issue, we think it would have been untenable even then.  The evidence is contained in the testimony of two witnesses examined by the defendant.  In answer to a question put to the witness Gardner, he answered as follows:

"I have heard Turner Lawrence say frequently that he was not a sponger; that he proposed paying his board; that there was no other place that he could pleasantly live; that he was getting old and had to be cared for by some one; that Mrs. Hester had always been acting a child's part by him and that he proposed to compensate her liberally for her kindness and attention, and that her not requiring him to make regular payments would make no difference except to make the compensation more liberal; that he (Lawrence) would leave her well provided for; that she was certainly casting her bread upon the waters in extending kindness to an old, forlorn man; that he (Lawrence) had

already commenced to make arrangement to build a house on her lot, said house to cost $2,000; that if anything happened to prevent this that he would leave her $2,000 in his will. I heard him say this several times. I signed his will as a witness, January, 1882. The will was executed by intestate. He (Turner Lawrence) left to Mrs. Hester $2,000 and freed her home lot. He left a granddaughter something. The will was executed in the winter before he died. He died in 1882. I have heard him make remarks like these at other times before this. He (Lawrence) made them frequently in the presence of her husband and the entire family; they were received by them as satisfactory. I heard Mrs. Hester say once, "Of course, uncle, I expect you to compensate me; suppose you were to drop off and leave me unprovided for." He (Lawrence) said, "Never mind, I will arrange that; you shall be paid." I am a sister of defendant, Mrs. Hester; the other witness to the will, Mrs. Hamlet, is the wife of Mrs. Hester's brother. Mrs. Hester's brother wrote the will and he also witnessed it. Mr. Lawrence did not want anyone to know about his business. In his will he said in consideration of kindness and attention he wished to remunerate her to the extent of $2,000. The factory was on the same property. In his will there was a provision that there was no debt on the place; she had already paid all except $50. I heard her uncle, Mr. Lawrence, say to her, I only hold this to secure you, and I think it best to do so. John wants to go off and I hold this (mortgage) so as to protect you. Mr. Hamlet was a citizen of Arkansas.

Another witness testified upon the subject as follows:

"Mrs. Hester is my sister-in-law. Mr. Hamlet drew the will, which was signed in the dining room. The will said that she (Mrs. Hester) was to have the amount of $2,000 for kindness to him. It was declared in the will that there was no indebtedness on the lot. He said several times he (Lawrence) would remember her (Mrs. Hester) at his death for her kindness to him. He (Lawrence) said if she would agree to sell the factory lot that it

would relieve her place from indebtedness. When Mr. Lawrence said he intended to provide for her in the will for her services to him, Mrs. Hester assented, and it was understood between them that he was to so provide for her for her services."

Now it must be conceded that the evidence tends rather to indicate a strong sense of obligation for gratuitous services and kind treatment, for which the deceased meant to make some substantial remuneration in the voluntary disposition of his estate after his death, than an admission of legal indebtedness to his relations, and but slender proof of the alleged contract is furnished in the intestate's declarations and acts as testified to. But they furnish some evidence of contract, acquiesced in by the plaintiff's failure to insist upon the absence of such evidence and an instruction to the jury so to find. Of its sufficiency to establish the agreement or understanding the jury alone are competent to determine, and their deductions are not within the supervision and control of this Court.

Our conclusion is that there is no error in the rulings, and the judgment is affirmed.

*It is so ordered.*