IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-911

Filed 21 May 2025

Union County, No. 21CVS002756

PALMETTO RTC, LLC, Plaintiff,

v.

BETH FIELDEN, BRUCE FIELDEN, & THE ESTATE OF JOE FIELDEN with Beth Fielden and Bruce Fielden as Co-Executors, Defendants.

Appeal by defendant from judgment entered 12 January 2024 by Judge Jonathan W. Perry in Union County Superior Court. Heard in the Court of Appeals 30 April 2025, sitting in the historic Cumberland County Courthouse, Fayetteville.

*Rayburn Cooper & Durham, PA, by Ashley B. Oldfield, and G. Kirkland Hardymon, for the plaintiff-appellant.*

*Wilder Pantazis Law Group, by Raboteau Wilder, Jr., for the plaintiff-appellant.*

*Thurman, Wilson, Boutwell & Galvin, P.A., by W. David Thurman, for the defendant-appellees.*

TYSON, Judge.

Palmetto RTC, LLC ("Palmetto") appeals the trial court's dismissal of its unjust enrichment claim and denial of its motion for judgment notwithstanding the verdict and alternatively for a new trial. We affirm the trial court's dismissal of the unjust enrichment claim and the denial of Palmetto's motion for judgment notwithstanding the verdict. We reverse the trial court's judgment in part, award a

new trial on Defendants' slander of title counterclaim, and remand.

## I.    Background

Beth and Bruce Fielden individually, and as executors of the Estate of Joe Fielden (collectively, the "Fieldens"), own approximately sixty-one acres of undeveloped land on Secrest Shortcut Road in Union County as tenants in common. They sought to sell the property, while retaining a life estate for their father, Joe Fielden, on a small portion of the property.

Palmetto engages in the business of entitling and enhancing raw land for resale to third-party developers, structuring the transactions to close and re-sell the property on the same day. Beth Fielden met with an associate of Palmetto, who told her Palmetto was interested in buying the property.

The parties entered into a series of four contracts for the purchase and sale of the property, providing for a closing date of 30 June 2021 and a contract expiration date of 15 July 2021. The Fieldens informed Palmetto the closing date would not be extended again. Palmetto had entered into a purchase agreement with American Homes for Rent to sell the property to them, combined with a neighboring parcel, for approximately $4.5 million. Palmetto claimed it was ready, willing, and able to close; however, the record reflects American Homes for Rent, Palmetto's purchaser, did not provide authorization to close and performance was never tendered.

The closing and expiration dates passed. The Fieldens notified Palmetto of the contract's expiration on 4 August 2021 and reiterated the contract's termination on

19 August 2021. The Fieldens signed a letter of intent to sell their property to Meritage, a different developer, on 22 September 2021, and they also explored a sale of the timber.

Palmetto filed suit against the Fieldens asserting claims arising from the failed real estate transaction. Palmetto also filed a notice of *lis pendens* concerning the Fieldens' property in the Union County Clerk of Superior Court on 28 September 2021. The Fieldens answered and asserted a counterclaim for, *inter alia*, slander of title.

The trial court granted the Fieldens' motion to dismiss Palmetto's unjust enrichment claim based upon the parties' stipulation to the existence of an express contract. The jury found in favor of the Fieldens on the validity and Palmetto's breach of the express contract claim with default of the earnest money, and for their slander of title counterclaim with an award of $152,001 in damages. The trial court denied Palmetto's motion for JNOV or, in the alternative, for a new trial. Palmetto appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. Issues

Palmetto argues the trial court erred by dismissing its unjust enrichment claim, submitting the statutory slander of title claim under the Real Property Marketable Title Act to the jury, and denying its motion for JNOV, and alternatively, for a new trial. *See* N.C. Gen. Stat. § 47B-6 (2023).

## IV.    Unjust Enrichment

The trial court granted the Fieldens' motion to dismiss Palmetto's *quantum meruit*/unjust enrichment claim because the parties had stipulated to the existence of an express contract.    Palmetto objected to the ruling and now contends the dismissal was erroneous because the express contract did not cover the same subject matter as its claim for *quantum meruit* or unjust enrichment.

### A.  Standard of Review

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Green v. Freeman*, 367 N.C. 136, 140, 749 S.E.2d 262, 267 (2013) (citation omitted).

### B.  Analysis

When an enforceable express contract covering the same subject matter exists between the parties, *quantum meruit* recovery is barred.  *Veto Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) (an express contract precludes an implied contract with reference to the same matter).  This canon is well-established in case law:

> An express contract, executory in its provisions, must totally exclude any such implication [recovery under an implied contract is available]. One party agreed, in consideration of the other to pay, to render the service; the other, in consideration of the promise to render the service, agrees to pay. One is the consideration and motive for the other, and each equally excludes any other consideration,

motive, or promise.

*Id.* at. 715, 124 S.E.2d at 909 (citation omitted).

Here, the parties stipulated the existence of an express contract for the purchase and sale of the property. The parties' contract further contemplated the development of the property. Section 3(a) states, "It is recognized by both Buyer and Seller that there is located on the property a cemetery . . . which shall be isolated from *development*." (emphasis supplied). Section 5 of the contract states, "It is understood that the Seller has granted the Buyer proper time for the property to be rezoned and approved and permitted for *development* by the City Council of Monroe, NC," and the contract reserves a life estate for Joe Fielden to remain "undisturbed during *development*." (emphasis supplied).

Palmetto's planned entitlement and development of the property was clearly contemplated by the contract and constituted part of its consideration and performance, rather than a separate and unrelated service. The Fieldens entered into the contract with the understanding Palmetto would seek to entitle and further develop the property, and they cooperated with Palmetto during the entitlement process. The planned development of the property falls squarely within the subject matter of the express contract and precludes any claim under an implied contract. *Id.* We affirm the trial court's dismissal of Palmetto's *quantum meruit* or unjust enrichment claim.

## V. Statutory Slander of Title

The trial court, over Palmetto's objection, submitted a claim of statutory slander of title to the jury. N.C. Gen. Stat. § 47B-6 (2023). Palmetto had moved for a directed verdict, contending the Fieldens' counterclaim had pled common law slander of title rather than the statutory claim. *Id.* The trial court denied their motion for directed verdict.

Palmetto subsequently filed a motion for JNOV or, alternatively, a new trial after return of the jury's verdict. The trial court denied Palmetto's motion for JNOV and for new trial on the grounds that the statutory slander of title was adequately pled.

**A. Standard of Review**

A trial court's denial of a motion for JNOV is reviewed *de novo* to determine "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Chisum v. Campagna*, 376 N.C. 680, 699, 855 S.E.2d 173, 186 (2021) (citation omitted). A trial court's ruling on a motion for a new trial is reviewed for abuse of discretion. *In re Will of Buck*, 350 N.C. 621, 625, 516 S.E.2d 858, 861 (1999).

"A trial court's conclusions of law are reviewed *de novo*, including legal conclusions contained in jury instructions." *Chappell v. N.C. DOT*, 374 N.C. 273, 281, 841 S.E.2d 513, 520 (2020) (citation omitted). Jury instructions must "present[] the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed." *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841,

847 (2002) (internal quotation marks and citation omitted). "The burden of proof is upon the party assigning error to demonstrate the jury instruction misled the jury or otherwise affected the verdict." *Lail v. Tuck*, ___ N.C. App. __, __, 908 S.E.2d 842, 845 (2024). "Questions of statutory interpretation are questions of law and are reviewed de novo." *In re Custodial Law Enf't Agency Recordings,* 287 N.C. App. 566, 570, 884 S.E.2d 455, 458 (2023) (citation omitted).

### 1. *Motion for JNOV*

Palmetto contends the trial court erred by denying its motion for JNOV. The Fieldens argue Palmetto failed to preserve the slander of title issue for review. To preserve an issue for appellate review, a party must make "a timely request, objection, or motion to the trial court, stating the specific grounds for the desired ruling. . .." N.C. R. App. P. Rule 10(a)(1). Here, Palmetto made a timely motion for directed verdict at the close of evidence, raising two issues: (1) the Fieldens had pled a common law claim of slander of title, not a statutory claim; and (2) the Fieldens had failed to prove special damages.

A motion for JNOV must be based on grounds previously raised in the movant's motion for directed verdict. N.C. Gen. Stat. § 1A-1, Rule 50(b)(1) (2023); *Munie v. Tangle Oaks Corp.,* 109 N.C. App. 336, 342, 427 S.E.2d 149, 152 (1993) (citing *Carter v. Parsons*, 61 N.C. App. 412, 418, 301 S.E.2d 405, 409 (1983)). In its motion for JNOV, Palmetto argued: (1) it did not "register[] a notice" claiming the property under the Real Property Marketable Title Act; (2) Section 47B-6 of that statute is not

applicable to the facts of this case; (3) the Fieldens did not prove the notice was false; (4) the Fieldens failed to prove they suffered a monetary loss because of the filing, as required; and, (5) slander of title claims must be pled with particularity, which the Fieldens failed to do.

Of these arguments, only the fourth and fifth were properly preserved at the motion for directed verdict. Therefore, Palmetto is limited to these arguments on review of the JNOV. Palmetto argues a claim under N.C. Gen. Stat. § 47B-6 was not asserted or mentioned in the counterclaim and no allegations support special damages that accompany the statute.

North Carolina is a notice pleading jurisdiction. A pleading is sufficient if it gives "notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and . . . to get additional information he may need to prepare for trial.'" *N. Carolina State Bar v. Merrell*, 243 N.C. App. 356, 362, 777 S.E.2d 103, 108-09 (2015) (quoting *Sutton v. Duke,* 277 N.C. 94, 104, 176 S.E.2d, 161, 167 (1970)). "It is not necessary to plead the law. The law arises upon the facts alleged." *Tharpe v. Brewer*, 7 N.C. App. 432, 436, 172 S.E.2d 919, 923 (1970).

The Fieldens' counterclaim alleged sufficient facts to put Palmetto on notice by including facts supporting the substantive elements of a slander of title claim: (1) registration of a notice, (2) for the purpose of asserting false or fictitious claims, and (3) damages suffered. The Fieldens were neither required to specifically reference

N.C. Gen. Stat. § 47B-6 (2023) in its counterclaim, nor does the statute require them to specifically plead special damages. *Id.*

The Fieldens' counterclaim was sufficiently pled and Palmetto's arguments for JNOV were not raised and preserved in its motion for directed verdict. We affirm the trial court's denial of Palmetto's motion for JNOV.

## 2. *Jury Instructions*

Jury instructions must address substantive features of a case arising from the evidence, so as "to leave no reasonable cause to believe the jury was misled or misinformed." *Lail*, __ N.C. App. at __, 908 S.E.2d at 845. Palmetto objected to the omission of the Fieldens' evidence tending to prove the elements of malice and falsity to show slander of title. The trial court overruled the objection, reasoning N.C. Gen. Stat. § 47B-6 refers to intent, not malice, and acknowledged the lack of clear guidance on the amalgamation of common law and the statutory slander of title claim. N.C. Gen. Stat. § 47B-6 (2023).

The jury was asked: "Did the Defendants suffer a monetary loss as a result of a false or fictitious notice registered by the Plaintiff on the Defendants' property? (referred to as 'slander of title')." It answered the issue on the verdict sheet "yes", and awarded the Fieldens $152,001 as damages.

The elements of statutory slander of title are: (1) the registration of a notice affecting real property; (2) for the purpose of asserting a false or fictitious claim; and (3) special damages. *Id.* Upon a showing of ill intentionality, a claimant may recover

attorney's fees and treble damages, provided such damages are alleged. *Burns v. Kingdon Impact Glob. Ministries, Inc.,* 261 N.C. App. 115, 817 S.E.2d 626 (2018) (unpublished).

Instructing the jury on the statutory slander of title claim, rather than on the common law claim, eliminated proof of two key elements: falsity and malice. This reduced the burden of proof on the Fieldens and likely affected the verdict. The omission of malice allows the proponent to show the 'claim' was made with ill intent. Likewise, the Fieldens did not need to prove the statutory claim was actually false, only to show it was registered "*for the purpose of asserting*" a false claim. N.C. Gen. Stat. § 47B-6 (2023).

To construe the statutory claim to require proof of both malice and intent would render the General Assembly's explicit reference to "intent" as superfluous. Our Courts have defined malice in this context as the "malicious intent to injure." *Whyburn v. Norwood,* 47 N.C. App. 310, 315, 267 S.E.2d 374, 377 (1980) (citing *Cardon v. McConnell,* 120 N.C. 461, 462-63, 27 S.E. 109 (1897)). Proof of malice inherently includes proof of intent. If the General Assembly had intended to retain malice as a separate and necessary element of a statutory slander of title claim, it would not have expressly authorized damages upon a showing of intent, independent of establishing the claim itself. *Id.*

### 3. Motion for New Trial

North Carolina's Real Property Marketable Title Act exists to promote the free

and efficient transfer of real property by extinguishing ancient or nonpossessory claims that may cloud title. The statute provides a 30-year unbroken chain of title is *prima facie* evidence of ownership. Its goal is to reduce litigation and simplify the title examination process. N.C. Gen Stat. § 47B-1, *et. seq.* (2023).

Palmetto contends the trial court erred in denying its motion for a new trial because the facts of this case, reviewed in the light most favorable to the non-moving party, do not support submission of the statutory slander of title claim. N.C. Gen Stat. §§ 1A-1, Rule 59(a)(8); 47B-6 (2023). We agree.

### a. Statutory Construction

The first step of statutory construction is to review the plain language of the statute:

> "No person shall use the privilege of *registering notices hereunder* for the purpose of *asserting false or fictitious claims* to real property; and in any action relating thereto if the court shall find that any person has *intentionally registered a false or fictitious claim*, the court may award to the prevailing party all costs incurred by him in such action, including a reasonable attorney's fee, and in addition thereto may award to the prevailing party treble the damages that he may have sustained as a result of the registration of such notice of claim."

N.C. Gen Stat. § 47B-6 (2023) (emphasis supplied).

> *All such parts of the common law* as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not

- 11 -

abrogated, repealed, or become obsolete, *are hereby declared to be in full force within this State.*

N.C. Gen Stat. § 4-1 (2023) (emphasis supplied).

Statutes in derogation of the common law are strictly construed. *Stone v. North Carolina Dept. of Labor*, 347 N.C. 473, 479, 495 S.E.2d 711, 715 (1998). Section 47B-9 provides: "This Chapter shall be liberally construed to effect the legislative *purpose of simplifying and facilitating real property title transactions* by allowing persons to rely on *a record chain of title* of 30 years as described in G.S. 47B-2, subject only to such limitations as appear in G.S. 47B-3." (emphasis supplied). N.C. Gen Stat. § 47B-3 (2023) lists fourteen exceptions, including six subsections.

Section 47B-6's use of "*registering notices hereunder*" indicates its provisions refer to facts and claims arising under this statute. It refers to procedures established within the broader Marketable Title statutory framework to reduce litigation and simplify the title examination process. N.C. Gen Stat. § 47B-1-9 (2023).

### b. *Real Property Marketable Title Act – Lis Pendens*

Section 47B-4 outlines the requirements for "registering . . . a notice" under the Real Property Marketable Title Act. N.C. Gen Stat § 47B-4 (2023). To preserve a claim to property, a person must file a written, acknowledged notice in the register of deeds' office in the county where the property is located within the 30-year period, specifying the nature of the claimed right or interest. *Id.*

A notice of *lis pendens* is defined under and is controlled by a wholly separate

statute and does not qualify as "registering notice" under § 47B-4, as it is not indexed by the Register of Deeds and is not a "claim to property." *Id.* Under N.C. Gen. Stat § 1-116(a), "Any person desiring the *benefit of constructive notice of pending litigation* must file a separate, independent notice thereof, which notice shall be cross-indexed in accordance with G.S. 1-117" with the clerk of superior court. N.C. Gen. Stat § 1-116 (a)-(d) (2023) (emphasis supplied).

A *lis pendens* is a procedural device filed with the clerk of superior court in the county where the real estate is located when a party seeks to give the public constructive notice of pending litigation, which may impact ownership, rights or claims. *Id.* The *lis pendens* itself is not a substantive claim to property; rather, it is a "Filing of notice of suit" and serves to preserve *status quo* notice to third parties of an underlying lawsuit, which *may* assert a substantive claim affecting property at some point in the future.

*Lis pendens* serves to protect third parties and to promote judicial efficiency. *Id.* As filing a *lis pendens* with the clerk of superior court does not constitute "registering notice" for the purpose of invoking § 47B-6, it cannot be a "false or fictitious *claim*[] to real property," if it is not a claim at all. N.C. Gen. Stat §§ 1-116; 47B-6 (2023). Section 47B-6 supplements, rather than displaces, the common law slander of title cause of action. *See* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 25.04 fn. 45.1 (Patrick K. Hetrick & James B. McLaughlin, J. eds., 6th ed. 2022). N.C. Gen Stat. § 47B-6 (2023). The common law remains in effect

unless explicitly abrogated by statute. N.C. Gen. Stat § 4-1 (2023). If individuals with potentially valid claims become fearful that filing a *lis pendens* might expose them to tort liability for "false claims," they may be deterred from filing a *lis pendens* to protect *status quo* altogether.

## VI. Conclusion

Palmetto filed a *lis pendens* with the clerk of superior court in Union County, but never filed any notice with the register of deeds in Union County asserting any claim of an ownership interest. As a result, Section 47B-6 is inapplicable to the facts of this case. N.C. Gen. Stat. § 47B-6 (2023). The trial court erred by denying Palmetto's motion for a new trial. *Id.*

We affirm the trial court's dismissal of Palmetto's unjust enrichment claim and its denial of Palmetto's motion for JNOV. We reverse the trial court's denial of Palmetto's motion for a new trial and remand for further proceedings consistent with this opinion. *It is so ordered.*

AFFIRMED IN PART; NEW TRIAL IN PART; AND REMANDED

Judges WOOD and GORE concur.